Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,328-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KELON YOUNG & TALITHA                    Plaintiff-Appellee
REED

versus

ISAIAH WOODS                             Defendant-Appellant

* * * * *

Appealed from the
Monroe City Court Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2023CV01110

Honorable Angie D. Sturdivant, Judge

* * * * *

ROUNTREE LAW OFFICES                     Counsel for Appellant
By: James A. Rountree

CUMMINS AND FITTS, LLC                   Counsel for Appellee
By: Sophie N. Barksdale

* * * * *

Before STONE, COX, and MARCOTTE, JJ.

**MARCOTTE, J.**

This civil appeal arises from the Monroe City Court, Parish of Ouachita, the Honorable Angie D. Sturdivant presiding. Defendant seeks review of the trial court's ruling granting each plaintiff $5,700 with legal interest for breach of duty as a lessor to maintain the leased premises in a condition for which it was leased and for failing to make necessary repairs. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

On June 20, 2023, plaintiffs Kelon Young ("Young") and Talitha Reed ("Reed") filed a pro se petition in the Monroe City Court seeking damages for "unsafe living conditions, emotional distress, pain and suffering, and negligence of property." Isaiah Woods ("Woods"), plaintiffs' landlord, was the defendant in the suit. Plaintiffs rented and lived at a residence owned by Woods, located at 1500 Powell Street, Monroe, Louisiana, which was their address for service that plaintiffs provided in their petition.

Plaintiffs did not provide written details of the living conditions at their rented house, but they attached a USB drive to their petition and stated in the petition, "Attached USB drive." The USB contained four videos of plaintiffs' backyard, recorded at different times, in which several inches of raw sewage and damp toilet paper were depicted covering most of the yard. A fifth video revealed the state of the storage/laundry room at their home, showing brown water flowing behind the wall where the washing machine was located and water damage to the storage room walls and floor, which appeared to be sinking. A sixth video showed that plaintiffs' toilet

would not flush and showed water damage to the bathroom and hallway walls and floors. In the last video a repairman said that he did not want to enter the backyard to make repairs because of the sewage.

Woods filed an answer and denied plaintiffs' allegations. He also filed a reconventional demand and third-party demand against the City of Monroe (the "City"). In his reconventional demand, Woods stated that plaintiffs were indebted to him for one month's unpaid rent for June 2023. He also claimed that: 1) plaintiffs stopped up the sewer lines and blocked the air return to the A/C unit of the home causing damage; 2) in May 2023, plaintiffs complained about a broken pipe and, upon inspection, Woods discovered that the hose to the washing machine was unscrewed, which left water running on the floor, which caused damage; and 3) the pumping station at the Powell Recreation Center was broken, causing sewage to back up throughout the neighborhood. He then claimed in his third-party demand that any damage that resulted from sewage problems was caused by a failure of the City to maintain its system, which resulted in overloaded sewer lines.

Plaintiffs answered Woods' reconventional demand and stated that the one hole in the wall of the home was caused by Young attempting to snake the toilet. Plaintiffs attached to their answer a letter addressed to "To whom it may concern," which said that the City's employees were prohibited from going on private property and faced suspension or termination if they did so. Plaintiffs provided a different address for service in their answer.

On July 10, 2023, the City filed an exception of lack of subject matter jurisdiction, arguing that Monroe City Court lacked subject matter jurisdiction over it as a political subdivision. The trial court signed a

consent judgment sustaining the City's exception of lack of subject matter jurisdiction and dismissed Woods' claims against the City without prejudice.

On April 29, 2024, the day of trial, Woods filed a motion to strike what was contained on the USB drive attached to plaintiffs' petition because the drive was not served on defendant. He argued that what was contained on the drive was outside the scope of the pleadings. On the same day, the trial court heard the motion to strike and held a trial on the merits.

Following argument, the trial court denied Woods' motion to strike. The trial court stated that, according to: 1) La. C.C.P. art. 1202, the clerk of court is not required to serve exhibits; and 2) La. C.C.P. art. 1311, exhibits do not have to be served unless the party who files the pleadings expressly prays for such service. The trial court asked Woods if he propounded discovery on plaintiffs, and he said he did not. Woods first argued that he did not have plaintiffs' new address, but he later acknowledged that they provided an updated address in their answer to his demand, with which he was served.

The case proceeded to trial. Plaintiffs testified about the sewage that was backing up in their yard and home and the damage it caused to the home. The videos from the flash drive were played for the court. Plaintiffs stated that Young fell while trying to snake the toilet in their back bathroom, making a hole in the wall.

Plaintiffs testified that a repairman refused to walk in the sewage waste in the backyard to repair their A/C unit. Plaintiffs did not let their kids play in the backyard because of the constant waste, and Reed said that she suffered emotional distress because their neighbor repeatedly complained

3

about the sewage that came from plaintiffs' yard into her yard. Plaintiffs stopped using the back bathroom of the home because the toilet would not flush. Plaintiffs stated that they said they lived in the Powell Street home for a full year because they did not want to break their lease.

Young testified that he notified Woods about the problem multiple times, but Woods told him to contact the City because it was the City's malfunctioning sewer system that was the problem. In turn, he contacted the City, which told him that he needed to contact his landlord because the problem was on private property. Young said the City did a cleanout in the front yard but not the backyard. He said that any repairs done under the home did not last, and the next day they had the same problems. Young testified that he had to visit a medical center because his feet "broke out," which medical personnel told him was caused by walking through the sewage in his backyard.

Woods testified that the City ran its sewage through the line to the Powell Street house, causing the problem. He said he contacted the City 15-30 times to remedy the issue, but they did not respond, or the City told him that the problem was his to remedy. Woods testified that the floor to the storage/laundry area, which held the washing machine and water heater, had to be replaced due to water damage. He could not say where the water damage came from. He stated that there were 12 large holes in the walls that had to be repaired after plaintiffs vacated the premises. He entered an invoice for $4,150 in repair work made on the Powell Street house, which included repair work for 12 holes and fixing the storage room floor.

4

Woods said that plaintiffs did not turn the property over to him as required in the lease and the court evicted them. Woods said he did not know there was a problem with the sewage prior to leasing the home to plaintiffs. He also said the house was built on piers and was about one to two feet off the ground.

Tyrone Holmes ("Holmes"), Woods' repairman, testified that he provided plumbing services for Woods. He said the City did a clean out of the front yard of the Powell Street house, but not the rest of the property. He stated that once the City fixed the sewage issues, there were no more problems at the house. Holmes stated that someone had removed a hose from the washing machine and left the water running, which was reported as a busted pipe. Holmes turned off the water, and that resolved the issue. He said that there were no sewage problems in that area of the home. Holmes stated that when the tenants called about sewage problems in the backyard, he would clean it out, but a couple of days later plaintiffs would call again about the same problem.

Holmes testified that a person from the City inspected the Powell Street property and said that there was nothing it could do until the problem at the Powell Recreation Center was corrected. Holmes went to the house two times to snake the backyard cleanout before plaintiffs moved into the property. Holmes said that he never saw water on the floor and the walls as was depicted in the videos on the occasions he went into the house while the plaintiffs were living there.

On May 6, 2024, Woods filed a motion to reconsider the ruling on his motion to strike. He argued that La. C.C.P. art. 1311 only applied to written

5

instruments, not USB drives. Woods again said that the failure to serve him with the USB drive meant that he was not informed of the claims made against him, making the subsequent proceedings absolutely null. The trial court denied his motion.

On May 30, 2024, the trial court signed a judgment awarding $5,700 to each plaintiff, taxing costs to defendant, and dismissing Woods' reconventional demand at his cost. In its written reasons for judgment, the trial court said that while defendant testified that the sewer problem was the fault of the City, no one from the City testified at trial. The trial court said that defendant entered the invoice for repair work into evidence, but he did not call the repairman to testify. The trial court pointed out that Woods stated that he was unsure if the water coming from the walls was from the plaintiffs living there and that there was a lack of evidence that plaintiffs caused any intentional damage to the property other than the one hole they admitted creating when they attempted to fix their ongoing sewer issues.

The trial court said that Woods knew of and blamed the City for the extended period in which there was feces, sewer water, and toilet paper covering plaintiffs' backyard. The trial court stated that the conditions in which plaintiffs lived at the Powell Street house rendered the leased premises unsuitable for habitation due to defendant's failure to make necessary repairs and that Woods breached his duties as a lessor under La. C.C. arts. 2691 and 2696. The court said plaintiffs were justified in vacating the premises on June 5, 2023, regardless of the eviction proceedings brought against them, after which they owed no further rent to defendant. The trial court set damages at $2,700 to each plaintiff, for half of nine months' rent

6

paid to Woods, and $3,000 to each plaintiff for pain and suffering. The total award was $11,400.

On June 10, 2024, Woods filed a motion for a new trial arguing that plaintiffs' petition alleged only legal conclusions unsupported by facts and that he was not notified of plaintiffs' claims because he was not served with the flash drive. Woods argued that the trial court was in error when it said in its written reasons for judgment that plaintiffs were justified in vacating the premises because when plaintiffs filed their petition on June 20, 2023, they still resided at the Powell Street house. He said that plaintiffs appeared in court to oppose their eviction on June 28, 2023, which he argued undermined their testimony about intolerable living conditions because they lived at the property through the end of their lease.

Woods attached a copy of the transcript of the eviction proceedings held on June 28, 2023, to his memorandum in support of his motion for a new trial. At those proceedings, plaintiffs stated that they had already moved out of the Powell Street house at the time of the hearing. The trial court granted the eviction "just so that Mr. Woods can take possession of the property."

On August 15, 2024, a hearing was held on the motion for a new trial. The trial court asked Woods why the transcript of the eviction hearing was not used at trial, and his counsel responded, "There was no reason to." The trial court said that its judgment awarding damages was due to the home being unlivable. The trial court noted that there was nothing that precluded Woods from subpoenaing someone from the City to testify.

The court said Woods was aware that there were sewer issues and that his position at trial was that the issues were the City's fault.

The trial court denied the motion for a new trial. In its oral reasons for judgment, the trial court pointed out that: 1) at the hearing on the motion to strike, defense counsel said he had received plaintiffs' answer to Woods' reconventional demand; 2) plaintiffs' new address was included in their answer; and 3) defense counsel said he had not propounded discovery upon plaintiffs. The trial court said that Woods' arguments were repetitive of what was in his motion to strike and the new evidence Woods included in his motion for a new trial could have been presented at trial. The trial court stated, "Due diligence prior to trial is important. Defendant failed to send discovery to [plaintiffs].... Defendant claims he was ambushed at trial with information contained in the USB drive that was filed in the clerk's office." Defendant now appeals.

## DISCUSSION

Woods' assignments of error are as follows:

1. The trial court erred by denying defendant-landlord's motion to strike the USB drive that plaintiffs attached to their petition but did not serve on defendant.

2. The trial court erred when it considered at trial evidence beyond the scope of the pleadings.

Woods contends that the USB drive plaintiffs attached to their petition contained all the allegations and evidence upon which the court granted its judgment. He states that plaintiffs' petition, without the flash drive, contained only legal conclusions and no material facts, as required by La. C.C.P. art. 891. He argues that La. C.C.P. art. 1311 states that a copy of a

8

written instrument which is an exhibit to a pleading need not be served upon an adverse party, and the flash drive was not a written instrument.

Woods argues he had no notice of plaintiffs' complaint, and that without having seen the videos on the flash drive and without a transcript of the eviction proceedings, defense counsel was unable to effectively cross-examine plaintiffs. He states that if the condition of the property was as bad as plaintiffs claimed, it would not have been necessary for a different city court judge to evict plaintiffs. Woods asks that this court reverse the trial court based upon its ruling on the motion to strike.

*Motions to Strike and for a New Trial*

The court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter. La. C.C.P. art. 964. Whether a motion to strike should be granted pursuant to Article 964 rests in the sound discretion of the trial court and is reviewed under the abuse of discretion standard. *Thurman v. Aguilar*, 21-1514 (La. App. 1 Cir. 6/22/22), 343 So. 3d 784, *writ denied*, 22-01110 (La. 11/1/22), 349 So. 3d 7.

Motions to strike are disfavored and infrequently granted. This is because striking a portion of a pleading is a drastic remedy, and because motions to strike are often sought by the movant simply as a dilatory tactic. However, a motion to strike is proper if it can be shown that the allegations being challenged are so unrelated to a plaintiff's claims as to be unworthy of any consideration and that their presence in the pleading would be prejudicial to the moving party. A motion to strike is a means of clearing up

the pleadings, not a means of eliminating causes of action or substantive allegations. *Id*.

A copy of any written instrument which is an exhibit to a pleading need not be served upon the adverse party unless the party who files the pleading expressly prays for such service. La. C.C.P. art. 1311.

We find that the trial court did not abuse its discretion in denying Woods' motion to strike. The USB drive plaintiffs attached to their petition as an exhibit was related to their claims that defendant breached his obligations as a landlord under La. C.C. art. 2691, *et seq*. Plaintiffs alleged in their petition that their landlord did not provide habitable living conditions, and the videos on the USB drive showed the condition of the rental house while the plaintiffs lived there. Therefore, the content of the USB drive was an inappropriate subject for a motion to strike because the attached drive was relevant to plaintiffs' claims, making it worthy of consideration and not prejudicial to defendant. Plaintiffs referenced the attached USB drive in their petition, and they were not required to request service of the drive with the petition.

We find defendant's argument that he was "blindsided" by what was on the USB drive at trial to be disingenuous. Defendant had ample opportunity to determine what was contained on the drive prior to trial by going to the clerk's office and viewing the contents of the drive and/or conducting discovery. Defendant had plaintiffs' address and could have compelled production of the USB drive, but did not do so. Defendant was also granted the opportunity to respond to the contents of the USB drive at trial and was able to cross-examine plaintiffs about what was contained

10

therein. Nearly 10 months passed between when plaintiffs filed their petition and when the trial was held. That length of time offered sufficient opportunity for defendant to ascertain what was contained on the drive.

We likewise find defendant's grievance that he was deprived of his due process rights because he was unaware of plaintiffs' claims to be insincere. If defendant believed that plaintiffs failed to state a cause of action, he could have filed a declinatory exception of no cause of action pursuant to La. C.C.P. art. 927(A)(5) at any time prior to the submission of the case for decision. If Woods thought that plaintiffs' petition did not conform with the requirements of La. C.C.P. art. 891 regarding fact pleading, he could have filed a dilatory exception pursuant to La. C.C.P. art. 926 prior to filing his answer. *See* La. C.C.P. art. 928. There were several avenues defendant could have taken to clarify plaintiffs' claims, but he did not do so. Defendant's decision to file a motion to strike on the day of trial was done so solely for the purposes of delay, and the trial court did not abuse its discretion by denying it.

Defendant also complains that he was unable to "effectively" cross-examine the plaintiffs without a transcript of the eviction proceedings. Defendant's grounds for a new trial were that the transcript of the eviction proceedings constituted new evidence which he could not have obtained with due diligence before or during the trial. *See* La. C.C.P. art. 1972. The standard of review of a ruling on a motion for new trial is abuse of discretion. *Succession of Wood*, 55,360 (La. App. 2 Cir. 11/15/23), 375 So. 3d 600, *writ denied*, 24-00168 (La. 4/3/24), 382 So. 3d 108.

11

The eviction proceedings were held on June 28, 2023. The trial on the instant matter was held on April 29, 2024, 10 months later. With due diligence, defendant could have gotten a copy of the transcript of the eviction proceedings prior to the trial. The trial court was correct in not considering the transcript of the eviction proceedings, and it did not abuse its discretion in denying defendant's motion for a new trial.

*Scope of the Pleadings*

Woods did not brief his second assignment of error claiming that the evidence presented at trial went beyond the scope of the pleadings. Defendant fails to state what that evidence was and how it went beyond the scope of the pleadings. Pursuant to U.R.C.A. Rule 2-12.4, all assignments of error and issues for review must be briefed, and the appellate court may consider as abandoned any assignment of error or issue for review which has not been briefed. A mere statement of an assignment of error in a brief does not constitute the briefing of the assignment of error. *State v. Davis*, 52,517 (La. App. 2 Cir. 5/22/19), 273 So. 3d 670, *writ denied*, 19-00928 (La. 11/25/19), 283 So. 3d 496. We, therefore, consider defendant's second assignment of error abandoned.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed. Costs of the appeal are assessed to appellant.

**AFFIRMED.**

12